**WO**                                                                                      SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Adam Paul Blomdahl,                                     No.   CV 20-01207-PHX-MTL (DMF)

               Plaintiff,

v.                                                                      **ORDER**

Unknown Jones, et al.,

               Defendants.

      Plaintiff Adam Paul Blomdahl, who is currently confined in Maricopa County Jail, brought this civil rights case pursuant to 42 U.S.C. § 1983.  (Doc. 11.)  Defendant moves for summary judgment, and Plaintiff opposes.[1]  (Docs. 78, 84.)  Also before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 90), which Defendant opposes (Doc. 92), as well as Plaintiff's "Motion to Re-affirm Stay for Injunctive Relief" (Doc. 95), which the Court construes as a motion for injunctive relief.

**I.       Background**

      On screening Plaintiff's Second Amended Complaint (Doc. 11) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourteenth Amendment deliberate indifference claim against Officer Brian Jones in Count 1 for failing to provide Plaintiff with a shower and denying him medical care.  (Doc. 12.)  The Court directed Jones to answer and dismissed the remaining claims and Defendants.  (*Id.*)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 82.)

1           In Count 1, Plaintiff alleges that on June 17, 2019, he was forced into a filthy cell

2           that had feces smeared on the walls because he had "refused a '3hr out' pod." (Doc. 11 at

3           3.)   Plaintiff claims that he became seriously ill on June 19, 2019, and when he told

4           Defendant Jones that he was sick and begged for a shower, Defendant Jones ignored him.

5           (*Id.*)   Plaintiff claims the next time Defendant Jones walked by, Plaintiff, "out of

6           desperation," said that he was suicidal.  (*Id.*)  Defendant Jones allegedly responded by

7           asking Plaintiff if he wanted Defendant Jones to get him a rope and, for the remainder of

8           the shift, harassed Plaintiff while Plaintiff was in severe pain from his illness.  (*Id.*)

9           Plaintiff claims that because Defendant Jones intentionally denied him medical care,

10          despite knowing Plaintiff needed medical care, Plaintiff suffered emotional distress,

11          prolonged illness, and needless pain and suffering.  (*Id.*)

12            Defendant Jones now moves for summary judgment and argues that his conduct did

13          not violate Plaintiff's Fourteenth Amendment rights.  (Doc. 78.)

14    **II.**    **Motions for Preliminary Injunction**

15            Plaintiff asks the Court to issue injunctive relief that prohibits him from being forced

16          "to take a cellmate and/or punish him for refusing a cellmate." (Doc. 90 at 4.)  Plaintiff

17          claims that he "made a medical claim regarding his classification to a one-man cell but was

18          denied and subject to excessive force, and punishment, [and] denied all property."  (Doc.

19          95 at 1.)  The Court is unable to grant the requested relief because the allegations in

20          Plaintiff's motions are not before the Court in this action.  Plaintiff's only claim against

21          Defendant Jones concerns Defendant Jones' alleged denial of medical care on June 19,

22          2019, which does not include a medical claim for a one-man cell.  New claims may not be

23          presented in a motion for injunctive relief and must be brought in a separate action or

24          amended complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d

25          631, 636 (9th Cir. 2015) (a plaintiff seeking injunctive relief must "establish a relationship

26          between the injury claimed in the party's motion and the conduct asserted in the

27          complaint") (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam)).

28          Thus, Plaintiff's Motions will be denied.

### III.      Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

. . .

. . .

. . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    Relevant Facts

As of June 17, 2019, Plaintiff was housed in closed custody in a one man, one hour out[2] cell in Maricopa County Jail.  (Doc. 79 (Def.'s Statement of Facts) ¶ 2.)  At some point on June 17, 2019, Sergeant Fisk informed Plaintiff that he was being transferred to a three hour out cell, and Plaintiff refused.  (*Id.* ¶ 3; Doc. 79-1 at 8 (Pl. Dep. 18:7–12).)  Sergeant Fisk escorted Plaintiff to his new three hour out cell.  (Doc. 79 ¶ 3; Doc. 79-1 at 9 (Pl. Dep. 26:13–17).)  Plaintiff's three hour out cell had feces on the walls and other surfaces.  (Doc. 79 ¶ 4.)  At deposition, Plaintiff testified that when he arrived at his new cell, he "was very ill, very tired, faint, and [had] stabbing pains in [his] guts, and diarrhea[.]"  (Doc. 79-1 at 11 (Pl. Dep. 41:1–2).)  Plaintiff also testified that he received cleaning supplies on June 18, 2019.  (*Id.* at 18 (Pl. Depo. at 22–24).)

On June 19, 2019 at 6:00 a.m., Defendant Jones walked by Plaintiff's cell; Plaintiff wanted to ask Defendant Jones for a shower, but Plaintiff was feeling sick and could not get up, so he was unable to ask Defendant Jones for a shower.  (Doc. 79-1 at 11 (Pl. Dep. 41:15–18.)  At approximately 7:00 a.m., Defendant Jones walked by Plaintiff's cell again, and Plaintiff told Defendant Jones, "This room is filthy.  I just got here. . . . I don't know what the schedule is in this unit, but I need—I think I'm sick.  I need medical.  I need a shower."  (*Id.* at 12 (Pl. Dep. 42:5–8).)  According to Plaintiff's deposition testimony, Defendant Jones responded, "It's too late for that. . . . You're supposed to be up at 6:00 in the morning when we first come by."  (*Id.* (Pl. Dep. 42:10–12).)  Plaintiff then told Defendant Jones, "I'm sick. . . . I couldn't get up [at 6:00 a.m.] . . . Can you please let me out for a shower just this one time?"  (*Id.* (Pl. Dep. 42:12–14).)  Defendant Jones responded, "No. . . . You're not—You were not up.  That means I got you down for a refusal."  And then Defendant Jones walked away.  (*Id.* (Pl. Dep. 42:15–19).)

---

[2] Assignment to a "one hour out" cell means that Plaintiff was allowed to leave his cell for one hour a day, and assignment to a "three hours out" cell meant that Plaintiff would be allowed to leave his cell for three hours a day.  (*See* Doc. 79-1 at 6–7 (Pl. Dep. 15:23–16:2).)

On June 19, 2019 at 8:00 a.m., Plaintiff barricaded his cell against Maricopa County Sheriff's Office (MCSO) Inmate Rules and Regulations to get Defendant Jones' attention. (*Id.* ¶ 6.)  Plaintiff testified at deposition that he told Defendant Jones, "The reason I am barricading is because . . . I am sick. . . . I need medical. . . . I feel suicidal. . . . I need to get out of this filthy cell."  (Doc. 79-1 at 15 (Pl. Dep. 46:12–15).)  Plaintiff testified that Defendant Jones responded, "Do you want me to get you a rope[?]"  (*Id.* (Pl. Dep. 46:18).) According to Plaintiff's testimony, he then told Defendant Jones, "Aren't you going to let me out of here?  Can you please let me out of here?  I'm begging you.  I'm in pain.  I need a shower.  I need medical."  (*Id.* at 16 (Pl. Dep. 47:2–4).)  But Defendant Jones responded, "No. . . .  You should have been up here at 6:00 in the morning, and that's the rules. [Defendant Jones begins laughing.]  You're shit out of luck."  And then Defendant Jones walked away while using a hard object to knock on Plaintiff's door to harass him.  (*Id.* (Pl. Dep. 47:6–10, 20–24).)  Plaintiff testified that Defendant Jones continued to walk by his cell "for hours" and continued to harass him until the next shift came on duty at 2:00 p.m. (*Id.* at 17 (Pl. Dep. 48:13–18).)

Defendant Jones asserts that Plaintiff never asked him for a shower or medical attention and asserts that Plaintiff never told him was suicidal or sick.  (Doc. 79 ¶¶ 15, 17.) Defendant Jones denies telling Plaintiff that he was too late for a shower and medical attention.  (*Id.* ¶ 16.)  Defendant Jones also denies asking Plaintiff, "Do you want me to get you a rope?" and denies knocking on Plaintiff's cell door or otherwise harassing Plaintiff on June 19, 2019.  (*Id.* ¶¶ 18, 19.)

On June 19, 2019 at approximately 2:00 p.m., Plaintiff completed a MCSO Health Needs Request when the next shift started, and he received medical attention on the morning of June 20, 2019.  (*Id.* ¶ 9; Doc. 79-1 at 17 (Pl. Dep. 48:19–21).)  Plaintiff testified at deposition that he received an antibiotic on June 20, 2019, but that he was not told what condition it was for and or what his diagnosis was.  (Doc. 79 ¶ 10; Doc. 79-1 at 19 (Pl. Dep. 57:16–24).)   However, Plaintiff's medical records show that he was actually prescribed Loperamide—which is an anti-diarrheal, not an antibiotic—twice per day for

one week.  (Doc. 85 (Pl. Statement of Facts) ¶¶ 10, 12; Doc. 85-1 at 1, 9 (Pl.'s Ex. E).)  After Plaintiff left the medical unit, he "ended up getting a shower" and "cleaned [his] room again." (Doc. 79-1 at 20 (Pl. Dep. 58:23–25).)  Plaintiff began feeling better a day or two after being seen in the medical unit.  (*Id.* (Pl. Dep. 58:20–22).)

Plaintiff never sought any other medical attention for anything related to this case while he was in MCSO custody after June 20, 2019 except for a sleep aid.  (Doc. 79 ¶ 12.)

Almost a year later in June 2020, Plaintiff got sick with stomach pains again while he was in the custody of the Arizona Department of Corrections (ADC).  (Doc. 79-1 at 21–22 (Pl. Dep. 61:10–11, 24–25, 66:14–15).)  Plaintiff was placed on pain medications around this time and complained of pain in his back, head, chest, lungs, knee, and stomach, but Plaintiff does not recall whether any doctor told him the pain medication was related to the events alleged in his Second Amended Complaint.  (*Id.* at 23 (Pl. Dep. 72:7–10, 18–25); Doc. 79 ¶ 14.)

## V.   Fourteenth Amendment Medical Care Claim

### A.   Legal Standard

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).  To state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively

unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

## B.   Discussion

Construing the facts in Plaintiff's favor, the first *Gordon* element is met where Plaintiff informed Defendant Jones—more than once—that he was sick, in pain, and suicidal, and Defendant Jones made intentional decisions regarding Plaintiff's medical care and his conditions of confinement. *See Castro*, 833 F.3d at 1070 (noting that this first element would not be satisfied only if the defendant's conduct resulted from something totally unintentional, such as an accident).

The second element considers whether Plaintiff faced a substantial risk of suffering serious harm.  Again, interpreting the facts in the light most favorable to Plaintiff, Plaintiff told Defendant Jones that he was sick and suicidal and needed to go to medical, and Defendant Jones laughed at Plaintiff, asked him he wanted a rope, and walked away.  It is undisputed that Plaintiff was prescribed anti-diarrheal medication the following morning.  On these facts, where Plaintiff reported being suicidal and suffering from significant pain and reported being sick more than once, and Defendant Jones did not send Plaintiff to the medical unit, inform the medical staff of Plaintiff's condition, or otherwise respond to Plaintiff's medical complaints, there exists genuine issues of material fact as to whether Plaintiff faced a substantial risk of suffering serious harm. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104

(1976)), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.")

As to the third *Gordon* element, the parties dispute whether Defendant Jones took reasonable available measures to avert the risk of harm to Plaintiff. Defendant Jones asserts that Plaintiff never told him that he was in pain or suicidal, but the Court must construe the facts in Plaintiff's favor that he informed Defendant Jones more than once that he was experiencing significant pain, begged to be taken to medical, and that during their second interaction at 8:00 a.m., Plaintiff reported that he was suicidal, and Defendant Jones taunted him by asking whether he wanted a rope before walking away. The Court must also take as true that Plaintiff had to wait several hours until the next shift arrived to submit a Health Needs Request, during which he continued to be in severe pain, and was finally seen by the medical staff the following morning. Taking as true that Defendant Jones responded to Plaintiff's report of being suicidal by asking Plaintiff whether he wanted a rope and told Plaintiff's that he was "shit out of luck" in response to Plaintiff's request to go to medical, a reasonable juror could find that the conditions of confinement imposed by Defendant Jones amounted to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (in considering the conditions of pretrial detention, courts consider whether the conditions amount to punishment). These facts further support that Defendant Jones did not act as a reasonable official in circumstances where a prisoner complained of severe pain and being suicidal. A reasonable juror could find that Defendant Jones' conduct satisfies the requirement that there be something akin to reckless disregard for the consequences of his actions.

The final element requires a showing that Defendant Jones' failure to take reasonable measures caused Plaintiff injury. The facts above show that Plaintiff informed

Defendant Jones of being suicidal and in significant pain and that Defendant Jones did not consult the medical or mental health staff or take any action in response to Plaintiff's complaints. Construing the facts in Plaintiff's favor, Plaintiff's condition deteriorated after his encounters with Defendant Jones, and he was left in severe pain for several hours for the remainder of Defendant Jones' shift and while Defendant Jones continued to walk by his cell. There is a question of material fact whether Defendant Jones' failure to act as a reasonable official caused Plaintiff to suffer unnecessary and severe pain for several hours before Plaintiff was finally able to seek medical care at the start of the next shift, which can be inferred as indifference. On this record, a reasonable jury could conclude that by not taking reasonable available measures, Defendant Jones caused Plaintiff's to suffer unnecessary pain.

Summary judgment will therefore be denied to Defendant Jones on the merits of Plaintiff's Fourteenth Amendment claim.

### C.    Qualified Immunity

In the alternative, Defendant Jones contends that he is entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two prongs in the qualified-immunity inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (internal quotation omitted.) In its analysis, the district court must view the facts "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted).

The Court has already determined that, when viewing the facts in Plaintiff's favor, there exist material factual disputes whether Defendant Jones violated Plaintiff's constitutional right to adequate medical care. The qualified immunity question therefore

turns on the second prong—whether the right at issue was clearly established at the time.

Defendant Jones contends that "it has not been clearly established by existing precedent that the purported wrongdoing by Officer Jones, including failing to provide a shower to a pre-trial detainee, violated Plaintiff's constitutional rights." (Doc. 78 at 9.) But Defendant's narrow focus on the denial of a shower does not fully capture Plaintiff's constitutional claim.

By June 2019 when Plaintiff's claim in this action arose, it was well established that jail officials have a duty to ensure that detainees are provided with medical care and that jail officials are deliberately indifferent when they fail to respond to a prisoner's pain or possible medical need. *See Gordon*, 888 F.3d at 1122-23 (explaining that Supreme Court held in 1976 that prison officials' deliberate indifference to serious medical needs of prisoners violates Eighth Amendment and that as early as 1986, the Ninth Circuit concluded that such Eighth Amendment guarantees provide the minimum standard of care for determining the rights of pretrial detainees to medical care under Fourteenth Amendment Due Process Clause); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Moreover, it was clearly established that although conditions of confinement may be restrictive and harsh, they cannot involve the "wanton and unnecessary infliction of pain" or be devoid of a legitimate penological purpose. *Id.* In addition, although Plaintiff has not identified a preexisting factually analogous case on point, at the time of Defendant Jones' challenged action, the controlling authority regarding a pretrial detainee's right of access to minimally adequate medical care was sufficiently settled to provide more than fair notice to any reasonable prison official that it was unlawful to ignore a detainee's complaints of severe pain and suicidal thoughts, and to do so for reasons unrelated to the pretrial detainee's actual medical needs. *See, e.g., Castro*, 833 F.3d at 1067 (contours of pretrial detainee's right to adequate medical care clearly established prior to 2009 such that prison official who knows "inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it" may be held liable under Section 1983).

1       Here, Defendant Jones' arguments regarding qualified immunity rest primarily on
2  Defendant's version of the facts; namely, that Defendant Jones was not aware of a
3  substantial risk of harm to Plaintiff.  But the Court must construe the facts in Plaintiff's
4  favor, and, when doing so, a reasonable official in Defendant Jones' position would have
5  understood that failing to provide, or otherwise obtain, necessary treatment to a detainee
6  who reported being suicidal and suffering from significant pain over  period of several
7  hours—and taunting the detainee instead of consulting the medical unit—constitutes a
8  failure to take reasonable measures to abate the risk to that detainee and effectively amounts
9  to a denial of medical care.  It should have been clear to a reasonable official that an outright
10 denial of medical care to a detainee who complained of being sick, in severe pain, and
11 suicidal violated clearly established law.

12      In light of the material factual disputes in this case, summary judgment based on
13 qualified immunity is not appropriate.  *See Conner v. Heiman*, 672 F.3d 1126, 1131 (9th
14 Cir. 2012) (a district court should decide the issue of qualified immunity only when the
15 material facts are not in dispute); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir.
16 2003) ("[w]here the [defendant's] entitlement to qualified immunity depends on the
17 resolution of disputed issues of fact in [his or her] favor, and against the non-moving party,
18 summary judgment is not appropriate").  Defendant Jones is not entitled to summary
19 judgment based on qualified immunity since there remain genuine disputes of material fact
20 as to whether Defendant Jones violated Plaintiff's clearly established constitutional right
21 to minimally adequate medical care.

22 **IT IS ORDERED:**

23      (1)    The reference to the Magistrate Judge is withdrawn as to Defendant's Motion
24 for Summary Judgment (Doc. 78), Plaintiff's Motion for Preliminary Injunction (Doc. 90),
25 and Plaintiff's "Motion to Re-affirm Stay for Injunctive Relief" (Doc. 95).

26      (2)    Plaintiff's Motion for Preliminary Injunction (Doc. 90) is **denied**.

27      (3)    Plaintiff's "Motion to Re-affirm Stay for Injunctive Relief" (Doc. 95) is
28 **denied**.

(4)     Defendant's Motion for Summary Judgment (Doc. 78) is **denied** as discussed herein.

(5)     This matter is referred to Magistrate Judge Eileen S. Willett to conduct a settlement conference.

(6)     Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Willett's chambers at (602) 322-7620 within 14 days to schedule a date for the settlement conference.

(7)     If the settlement conference is not successful, the parties must file a joint status report within **30 days** following the settlement conference proposing dates and times for a trial-setting conference.

Dated this 30th day of November, 2021.

Michael T. Liburdi
United States District Judge